NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK ROIGE,           : <br>         Petitioner,   : <br>                : <br>       v.            : <br>                : <br> THE ATTORNEY GENERAL   : <br>                : <br> OF THE STATE OF NEW JERSEY, *et al.*,   : <br>                : <br>         Respondents.   : | Civil Action No. 17-1513 (JMV) <br><br><br> **OPINION** |

APPEARANCES:

Mark Roige
Northern State Prison
168 Frontage Road
Newark, NJ 07114
        Petitioner, *pro se*

Milton Samuel Leibowitz
Union County Prosecutor's Office
32 Rahway Avenue
Elizabeth, NJ 07202
        On behalf of Respondents.

**Vazquez, United States District Judge**

## I.     INTRODUCTION

Petitioner Mark Roige ("Petitioner"), a prisoner currently confined at Northern State Prison in Newark, New Jersey, has filed a *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 5). For the reasons explained below, the Court denies the Petition and denies a certificate of appealability.

## II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

The factual background and procedural history in this matter were summarized in part by

the New Jersey Superior Court, Appellate Division on Petitioner's direct appeal.[1]

> Rahway police officer Edward Lowe testified that he was on patrol in a marked police vehicle on the evening of January 28, 2008. He was dispatched to the corner of "Whittier and Raleigh" and spoke to a woman, E.B.[2], "visibly upset," with "a bruise . . . on her wrist." She claimed "somebody attempted to steal her backpack" and supplied Lowe with a description of the man and the direction he fled.
>
> Within minutes, Lowe received a report that someone was "running through backyards," and that a suspect "matching the description" had been located. Lowe drove E.B. to that location and told her "we've possibly found a . . . suspect . . . [He] told her to take her time, if she recognize[d] anything about him, to let [him] know." Defendant was standing in front of another patrol car, without handcuffs, and the headlights of the patrol car illuminated the area. E.B. was approximately twelve feet away, looking out the rear window of the patrol car, when she identified defendant as the man who had robbed her.
>
> Officer Donald Dayon also testified at the [*Wade* [3]] hearing. He was dispatched to the area, engaged in a foot patrol and encountered a homeowner, T.T., who told him "there was an individual in his yard." Dayon received a broadcast that someone had been apprehended. Within "a couple of minutes," Dayon took T.T., who indicated he could identify the man, in his police vehicle to the suspect, who was standing next to a police car. Dayon told T.T., "he was going to . . . make a determination, a positive or negative identification . . . if that was the gentleman in his yard." T.T. identified defendant without any equivocation.
>
> The judge concluded that given the short period of time between the events and the two identification procedures, there was nothing

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

[2] The Court will identify the victim and non-law enforcement witnesses by their initials.

[3] *United States v. Wade*, 388 U.S. 218 (1967).

"impermissibly suggestive" and denied defendant's request to suppress the out of court identifications.

Before the jury at trial, E.B. testified that she was walking to her home and was right outside when someone grabbed her from behind. She started to scream, and her assailant demanded money and her bag. E.B. resisted, felt the man had "facial hair and stubble," and tried to grab his neck and face. She fell to the ground, and the man dragged her by her backpack until the strap broke. He ran off with her backpack that contained her laptop computer, cell phone, wallet, camera, a book and house keys. She suffered injuries to her face and a "bump on [her] head." E.B. identified her backpack and various items that were in it when stolen.

T.T. testified that he saw someone in his yard near his "grill" who was "bobbing and ducking down." T.T. called out, and saw the man who had some "facial hair." The police put T.T. in their vehicle, and he made an identification within "ten or [fifteen], [twenty] minutes." T.T. claimed defendant was "handcuff[ed]" when he saw him. T.T. could not identify defendant in court, but did identify a photo of defendant, shown to him by the prosecutor, as the man he identified that evening.

Officer Kevin Ronski initially detained defendant because he fit the description already broadcast. Once identified by E.B. and T.T., defendant was placed under arrest. He had blood on his neck and the middle finder [sic] of his left hand, and he appeared to be out of breath and sweating.

Other officers testified regarding the recovery of E.B.'s property in the yards of nearby homes. Photographs of defendant's hands taken that night showed they were injured and bloody. DNA analysis of E.B.'s backpack revealed the presence of defendant's blood.

Defendant elicited on cross-examination that a photo array containing his picture was shown to a woman who also told police she saw someone running through a backyard. She could not make a positive identification of defendant.

Defendant testified in his own behalf. He claimed that as he was walking home from a friend's house, he was approached by a stranger who said, "you look like a man who knows something about fine electronics." The man showed defendant a backpack containing a laptop computer, cellphone and digital camera, and permitted defendant to "rummage[]" through the bag. Defendant told the man

> he was not interested and continued walking until he was detained
> by the police.
>
> Defendant testified that he worked for a florist and frequently cut
> his hands on "thorns and spines." He denied any involvement in the
> robbery, or that he ran through backyards to elude being
> apprehended.

*State v. Roige*, Indictment No. 08-05-0469, 2012 WL 952250 at *1-2 (N.J. Super. Ct. App. Div.

Mar. 22, 2012).

Following a jury trial, Petitioner was convicted of second degree robbery in violation of

N.J. Stat. Ann. § 2C:15–1. *Roige*, 2012 WL 952250 at *1. The trial judge granted the State's

motion to sentence Petitioner as a persistent offender pursuant to N.J. Stat. Ann. § 2C:44-3(a), and

imposed a sentence of thirteen years imprisonment, with an eighty-five percent period of parole

ineligibility pursuant to the No Early Release Act ("NERA"). Petitioner filed a notice of appeal,

and the Appellate Division ordered a remand to the trial court for reconstruction of the transcript

of his sentencing pursuant to Rule 2:5-3(f). *Id.* The Appellate Division then affirmed Petitioner's

conviction. *Roige*, 2012 WL 952250 at *4. The New Jersey Supreme Court denied certification

on October 5, 2012. *State v. Roige*, 53 A.3d 662 (N.J. 2012).

Petitioner subsequently filed a petition for post-conviction relief ("PCR"), which the trial

court denied on October 25, 2013, without convening an evidentiary hearing. (ECF Nos. 11-18,

11-33). On January 15, 2016, the Appellate Division affirmed the PCR Court's decision. *State v.

Roige*, Indictment A-4389-13T1, 2016 WL 166028 (N.J. Super. Ct. App. Div. Jan. 15, 2016). On

December 12, 2016, the New Jersey Supreme Court denied Petitioner's petition for certification.

*State v. Roige*, 157 A.3d 863 (N.J. 2016).

Petitioner filed a petition for habeas relief under § 2254 on March 2, 2017, and an amended

petition on May 24, 2017. (ECF Nos. 1, 5). On September 15, 2017, Respondents filed an answer.

(ECF No. 11). Petitioner does not list any grounds for relief in his federal habeas petition. (ECF No. 5). However, he attaches the Appellate Division's opinion affirming the PCR court's decision as well as his "Pro Se Reply Letter Brief" that was submitted to the Appellate Division. (ECF No. 5 at 18-32).

Petitioner raises the following claims in his PCR petition:

1. Ineffective Assistance of Counsel because of counsel's failure to call several individuals as witnesses including: S.G and C.P.; J.B.; J.D.; Police Dispatcher Rodgers; counsel's failure to effectively cross-examine T.T.; as well as counsel's failure to introduce Rahway Police Department Dispatch Records. (ECF No. 11-15 at 2).

2. "Petitioner has established a *prima facie* case sufficient to require the ordering of an evidentiary hearing." (*Id.*).

3. "Petitioner's claims are not barred procedurally from being raised in this petition for post conviction relief." (*Id.* at 3).

4. "Defendant incorporates by reference the arguments contained in his initial verified petition and in any pro se supplemental brief." (*Id.*)[4]

Respondents submit that Petitioner has not raised any claims for federal habeas review, however, even if the Court were to consider Petitioner's ineffective assistance claims presented to the PCR Court, the claims lack merit. (*Id.* at 8-9).

## III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), federal courts in habeas corpus cases

---

[4] Based on this Court's review of the referenced state court filings, no additional claims appear to have been raised.

must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett,* 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)). Moreover, AEDPA deference applies even when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

Clearly established law for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A federal habeas court may grant the writ if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a

set of materially indistinguishable facts." *Id.* at 413. Furthermore, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record. *Cullen*, 563 U.S. 170 at 181–82.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d. Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*,

392 F.3d 551, 556 (3d. Cir. 2004).  This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)).  If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV.  ANALYSIS

The Court has considered Petitioner's claims to the PCR Court, which were entirely ineffective assistance of counsel claims.  The Court finds that Petitioner's claims do not warrant federal habeas relief.

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the defendant must show that counsel's performance was deficient.  This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id.* at 687.  Second, the defendant must show that he was

prejudiced by the deficient performance. *Id.* This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.*

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Id.* at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Furthermore, *Strickland's* second prong requires a defendant to show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted). "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

Petitioner challenges his counsel's failure to call certain witnesses to testify in the defense's case-in-chief, counsel's cross-examination of a state witness, as well as his failure to introduce certain documentary evidence. (ECF No. 11-15 at 21-25). Petitioner first submits that counsel failed to call S.G. and C.P., two individuals who provided statements to the police shortly after the robbery. (*Id.* at 21). Petitioner next argues that trial counsel was ineffective for failing to call his employer, J. B., who would have established "[d]efendant's daily routine, his position and most importantly the common occurrence of cutting one['] s hands while working." (*Id.* at 22-23). Petitioner adds that trial counsel was ineffective for failing to call P.D.[5] as a witness, to testify that Petitioner was with him at his home at or near the time period which the robbery occurred. (ECF No. 11-15 at 23). Petitioner then asserts that trial counsel was ineffective for failing to call a police dispatcher, Rodgers, as a witness as well as for failing to introduce the Rahway Police Department dispatch records into evidence. Petitioner claims that this evidence could have called into question both the state's theory of when the robbery occurred as well as the suspect description provided by the victim. (ECF No. 11-15 at 24). Petitioner also argues that trial counsel was ineffective for failing to effectively cross-examine state witness, T.T., about the timing of his 911 call. (*Id.* at 24). Petitioner submits that this would have established that he was being questioned before the robbery occurred. (*Id.*)

---

[5] Petitioner also refers to him as "J.D." in the subheading of the claim. (ECF No. 11-15 at 23).

The last reasoned decision was the Appellate Division's opinion affirming the PCR Court. That court stated as follows:

> Deciding which witnesses to call to the stand is " 'an art,' " and we must be " 'highly deferential" to such choices. *State v. Arthur*, 184 N.J. 307, 321, 877 A.2d 1183 (2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)). Furthermore,
>
> > [d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront. A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will by [sic] subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
> >
> > . . .
>
> Where the defendant asserts that his attorney failed to call witnesses who would have exculpated him, "he must assert the facts that would have been revealed, 'supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.' " (citation omitted).
>
> *Here, defendant supplied no affidavits from any of the purported witnesses. Thus, his PCR petition was supported by nothing more than bald assertions.* In addition, the fact that defendant may have had cuts on his hands from his employment was not exculpatory. It mattered not where defendant cut his hand. What mattered was that his blood was found on E.B.'s backpack. Further, the statements of S.G. and C.P. proved nothing more than they saw another individual in the neighborhood. This evidence does not raise a reasonable doubt as to defendant's guilt.
>
> We are satisfied that defendant failed to present a prima facie case of ineffective assistance of counsel to warrant an evidentiary hearing. Even assuming that trial counsel's performance was deficient, given the overwhelming evidence of defendant's guilt, the outcome would not have been different.

*See Roige*, 2016 WL 166028 at *2-3 (emphasis added).

Petitioner first argues that counsel failed to call S.G. and C.P. as witnesses. (ECF No. 11-15 at 21-22). Petitioner submits that S.G. and C.P., who were walking their dog in the vicinity of where the robbery victim's stolen property was found, observed another individual near the belongings. (*Id.*) Petitioner further submits that while they gave a statement to the police stating that they had an opportunity to observe the man who jumped over a neighbor's fence, they did not identify Petitioner as the individual they saw. (*Id.* at 22). In his state court filing, Petitioner refers to S.G. and C.P.'s written statements provided to the police shortly after the robbery occurred. (*Id.*) The Court has reviewed the exhibits containing S.G. and C.P.'s statements to the police. (ECF No. 11-15 at 37-40).

While the couple reported that they saw a strange man standing near an SUV near the robbery site, Petitioner has not established this other individual's relevance. S.G. and C.P.'s statement also indicates that they saw a man jumping over fences and running down the street. (ECF No. 11-15 at 37). Importantly, the physical description which they provided of the man jumping over fences is consistent with the suspect's description that was provided by the victim and another witness. *See Roige*, 2016 WL 166028 at *1. Finally, contrary to Petitioner's assertion that S.G. and C.P. could not identify him, the record does not reflect that they were ever asked to identify any suspect. Petitioner has not demonstrated how he was prejudiced by counsel's purported failure to call these two individuals to the stand. Further, Petitioner has not submitted an affidavit or any other supporting document in support of his claim of what S.G. and C.P.'s testimony would have entailed. *See, e.g.*, *Tolentino v. United States*, Civ. Action No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014) ("[A petitioner's] failure to include a sworn statement regarding the nature of [a witness's proposed testimony is fatal to his making a prima

facie showing of prejudice.")  In light of the record, the state court's determination that counsel was not ineffective was neither contrary to clearly established Federal law nor an unreasonable application of that law.   Accordingly, Petitioner's claim is denied as to S.G. and C.P.

Petitioner next claims that counsel was ineffective for failing to call his employer, J.B. Petitioner argues that J.B. could have explained Petitioner's routine as well as the reason for the cuts on his hand.  (ECF No. 11-15 at 22-23).  The record reflects that Petitioner testified in his own defense and explained that he frequently cut his hands because he worked in a floral warehouse. (ECF No. 11-31 at 26).   Additional testimony that Petitioner frequently cut his hands at work would be of limited significance.  As the state court correctly explained, what mattered was not where he cut his hand but rather that his DNA was on the robbery victim's backpack.  *See Roige*, 2016 WL 166028 at *3.  Furthermore, Petitioner failed to supply any affidavits to support what J.B.'s testimony would have entailed.  As a result, Petitioner has not demonstrated how he was prejudiced by counsel's choice not to call J.B. to the stand.  The state court's determination that counsel was not ineffective was not contrary to or an unreasonable application of clearly established Federal law.  Accordingly, Petitioner's claim is denied as to J.B.

Petitioner also claims that P.D. could have testified that he was with him at P.D.'s apartment between 5:00 and 9:30 on the night of the robbery, and therefore could not have been at the train station because of the distance between P.D's apartment and the train station.  (ECF No. 11-15 at 23).   Again, Petitioner has not provided any documentary support of what P.D.'s testimony would have entailed.  For example, Petitioner does not include an affidavit from P.D. indicating that P.D. would testify consistent with Petitioner's alibi.  In light of the record, the state court's determination that counsel was not ineffective was neither contrary to clearly established

Federal law nor an unreasonable application of that law. Accordingly, Petitioner's claim is denied as to P.D.

As to Petitioner's argument that counsel was ineffective for failing to present a police dispatcher's testimony, this claim also fails. The Court notes that although Petitioner raised this issue before the PCR Court and the Appellate Division, neither state court addressed the issue of Rodgers' potential testimony. Petitioner argues that police dispatcher Rodgers could have testified about the timing of the 911 call which "would have confirmed the description offered by the victim" and "would have pointed out to the jury that different officers were given different descriptions when attempting to locate the perpetrator." (ECF No. 11-15 at 24). The record reflects that the victim, E.B., did not testify that she ever called the police or that she was aware who called the police for help. (ECF No. 11-29 at 14-36). E.B. only testified that the police responded to the scene fairly quickly and that she provided a physical description of her assailant shortly before the police officers took her to identify the Petitioner. (*Id.* at 18-19).

Petitioner has not established how he was prejudiced by counsel's failure to call the police dispatcher. As with the previously named potential witnesses, Petitioner has not provided any documentary support of what P.D.'s testimony would have entailed or how he was prejudiced by counsel's supposed dereliction. In light of the record, counsel was not ineffective for not calling Rodgers as a witness. Accordingly, Petitioner's claim is denied as to P.D.

Petitioner next claims that counsel's cross-examination of T.T. was ineffective. Petitioner argues that adequate cross-examination about the timing of T.T.'s 911 call would have revealed that Petitioner was already being questioned by police before the robbery occurred. (ECF No. 11-15 at 24). The Court notes that although Petitioner raised this issue before the PCR Court and the

Appellate Division, neither state court addressed this specific claim. This claim can nonetheless be denied on the merits. *See Granberry*, 481 U.S. at 131, 135.

At trial, T.T. testified that he ran outside of his home to take a better look at a strange man, who jumped over his backyard fence. (ECF No. 11-29 at 37-38). Further, although T.T. testified that he "yelled to [his] wife to call the police," he never provided that he personally called the police. (*Id.* at 39). Petitioner has not demonstrated how cross-examining T.T. about the timing of a 911 call which he did not personally make, would have changed the outcome of the trial. The record reflects that T.T. spoke to the police and provided a description of someone who he later identified as Petitioner. (*Id.* at 39). The trial record also reflects that trial counsel was a vigorous advocate on Petitioner's behalf, and did attempt to undermine the state's case, primarily through undermining the reliability of the witnesses' identifications and the police work. In light of the record, Petitioner's *Strickland* claim fails. Therefore, Petitioner's claim is denied as to T.T.

Finally, Petitioner submits that trial counsel was ineffective for failing to introduce Rahway Police Department Dispatch records into evidence. Once again, the Court notes that although Petitioner raised this issue before the PCR Court and the Appellate Division, neither state court addressed this specific claim. This claim can nonetheless be denied on the merits. *See Granberry*, 481 U.S. at 131, 135.

Petitioner argues that the dispatch records along with P.D.'s testimony that they were together at his home between 5 and 9:30 on the evening of the robbery, would have undermined the state's theory of when the crime occurred. (ECF No. 11-15 at 25). Although Petitioner insists that the state witnesses provided an incorrect time of when the robbery occurred, he does not provide any details about his exact whereabouts immediately before the robbery. He solely provides that he was with P.D., and that P.D's home was not close enough for him to travel to the

Rahway train station by the time the state submits the robbery occurred. As the court already noted, Petitioner has not provided any documentation to support what P.D.'s testimony would have entailed. Nor has he provided any affidavits or other documentary support about what the dispatch records would have entailed. Petitioner has failed to show that there was a "reasonable probability" of a contrary outcome had counsel introduced the records. Accordingly, Petitioner's claim is denied as to the dispatch records.

## V.      CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

## VI.     CONCLUSION

For the reasons discussed above, Petitioner's habeas petition is denied. A certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.


Dated: 1/9/2020                                    s/ John Michael Vazquez
                                                   JOHN MICHAEL VAZQUEZ
                                                   United States District Judge